*J. W. Mooney*, for plaintiff in error.

*Joseph P. Hanley*, for defendants in error.

---

## INJURY FROM THE ESCAPE OF AN ELECTRIC CURRENT.

[Circuit Court of Lucas County.]

THE TOLEDO RAILWAYS & LIGHT COMPANY v. CLARA RIPPON, ADMINISTRATRIX.

Decided, June 23, 1906.

*Electric Wires—Negligence in Permitting Current to Escape—Proximate Cause of Injury from Fugitive Current—Presumption of Ordinary Care—Burden of Proof—Charge of Court.*

1. A negligent act or omission to act becomes direct and proximate in its relation to a claimed event, when the event is the natural and probable result of such negligent act or omission, and one which in the light of the circumstances should have been foreseen as likely to occur.

2. To make negligence a proximate cause of an injury, it is not necessary that the precise result which occurred should have been anticipated. If in the light of the circumstances results of that general character should have been anticipated by ordinary foresight as likely to occur, that would, so far as that question is concerned, be sufficient.

3. If, in the exercise of ordinary foresight, and the light of the circumstances, the negligent escape of a powerful current of electricity from the wires of a power company to those of a telegraph company should have been anticipated by the former as likely to occur, such negligence will be deemed the proximate cause of the death or injury of an employe of the telegraph company occasioned by his contact, while in the performance of his duties, with his employer's wires so charged.

4. A party is not held to the anticipation of extraordinary events; but storms deranging to some extent the wires of electrical companies are not extraordinary events, so unusual or unprecedented as to relieve such companies from the legal necessity of reasonable precautions to protect others from dangers caused thereby.

5. The high degree of care to which a company may be held with reference to the control of a dangerous electric current, is only ordinary care in view of the danger to be apprehended, and the burden of proving that such care was not exercised is upon the one complaining of injury from the escape of the current.

6. An intimation in the charge to a jury, that a presumption exists and remains throughout the case that the plaintiff was not guilty of contributory negligence, but exercise ordinary care, is not preju- that negligence of the plaintiff need be shown by a preponderance of the evidence only.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

This is a proceeding in error to reverse the judgment of the court below in favor of the administratrix of the estate of Robert Rippon, deceased, and against the Railways & Light Company, based upon the verdict of a jury for $4,000.

Robert Rippon was an employe of the Western Union Telegraph Company, and while in the discharge of his duties, he was killed by coming in contact with an electric wire of that company which had been charged with a powerful and fatal current of electricity escaping from the wires of the Railways & Light Company.

The case is not complicated by any particular dispute as to the negligence of the defendant company. By Section 3471-3 of the Revised Statutes of Ohio, the Railways & Light Company is charged with a certain duty of protection of its wires, so as to prevent the escape of a dangerous current of electricity therefrom. After providing that a company organized for the purpose of supplying electricity for power purposes and for lighting streets and buildings of municipalities may have certain privileges and franchises essential to the carrying on of their work, the statute provides further that—

"All wires erected and operated under the provisions of this act shall be covered with a waterproof insulation, and said poles, piers, abutments and wires shall be so located and arranged as not to interfere with the successful operation of existing telegraph and telephone wires."

The mischief here was caused, as the petition claims and the evidence, we think, sufficiently discloses, by the placing of one of the power wires carrying a large voltage of electricity in

too close proximity to one of the wires of the telegraph company which had theretofore been conducted into the building and to a clock moved by the power of an electric current. The defendant power company, some two years or so after the telegraph wire had been so carried into the building and connected with the clock, placed one of its wires for the conduct of the larger and dangerous current within the same porcelain duct in the wall of the building, so that the two wires were brought almost in contact, and although at the start, perhaps, sufficiently insulated, the insulation was liable to become frayed and rubbed away by the friction of the wires against each other, by reason of action caused by winds or storms or otherwise; and it is said that snow was liable to collect within the porcelain duct between the wires or against them, so as to afford further means for the passage of the current by induction from the one wire to the other.

Just previous to the fatal occurrence which is made the basis of this action, a severe storm had deranged the wires of at least the telegraph company, and it had become necessary to do some repairing or remedying of the difficulty. It is unnecessary that I should go into the details. It is sufficient to say that while Mr. Rippon was engaged in restoring the wires to their proper state of usefulness and rendering them safe, by reason of the crossing of one wire with another he received the current of electricity in his body which caused his death. We think there can be no question that the jury was justified in finding the defendant company negligent in the manner in which I have indicated. Not only did the evidence tend to show negligence in the placing of these two wires in juxtaposition or in dangerously close proximity to each other, but we think that the jury was abundantly warranted in finding such evidence sufficient.

It is urged that the defendant power company owed no duty to an employe of the telegraph company. Probably it did owe no special duty to such employe; no duty other than that which might arise from the knowledge of the power company that the escape of a dangerous current of electricity from its wires might cause death or injury to any person, whether employed by the telegraph company, or who by reason of any other fact

should come in contact with a wire of the telegraph company which, under other circumstances, would not be attended with danger. This question as to what duty was owed by the power company to any person who might be placed in peril by reason of its negligent act, is closely connected with the question of proximate or remote cause. This court has had occasion to examine with considerable care a case in which almost precisely the same question arose, wherein the firm of Marsh et al, of Norwalk, was one of the parties plaintiff associated with certain insurance companies, and Andrew E. Lang, receiver of the Lake Shore Electric Railway, and several other companies, were made parties defendant. The case is reported in 7 C. C.— N. S., page 405. This case affirmed the judgment rendered in the court below, and in Vol. 3, *Ohio Law Reporter,* beginning on page 635, will be found the entire charge of the trial judge, who, as it happens, was myself, in the court of common pleas. The questions involved in that case were so interesting, and, in some respects novel, that they called for a pretty careful examination of numerous adjudications under the comparatively new conditions which have arisen with the rapid progress of applied electrical science. In the charge, which was approved by the circuit court, I said to the jury:

"A negligent act or omission to act becomes direct and proximate in its relation to a claimed event when the event is the natural and probable result of such negligent act or omission, and one which in the light of the circumstances should have been foreseen as likely to occur."

Now, the attorney for the plaintiff in error here urges that this event in the case at bar, can not deemed proximate unless the defendant company could have foreseen the particular event as likely to occur. He does not so say in words, but that is the substance of one portion of his argument; in other words, that unless in the exercise of ordinary foresight the power company could have foreseen that an employe of the telegraph company, in repairing wires which had been somewhat demoralized by a storm would be placed in such a position of danger that the negligence of the power company might cause his injury or death by permitting a heavy current of electricity to

reach the wire of the telegraph company, such negligence would not render the company liable. But this question was met in the Marsh case, to which I have referred, in another part of the charge which I gave. Having charged with considerable detail and with some elaboration along the line of this question of proximate and remote cause, I said to the jury in qualification this:

"In this connection it is proper that I say to you as I do, that to make negligence a proximate cause of an injury it is not necessary that the precise result which occurred should have been anticipated. If in the light of the circumstances, results of that general character should have been anticipated by ordinary foresight as likely to occur, that would, so far as that question is concerned, be sufficient."

So here, if in the exercise of ordinary foresight the power company should have realized that the negligent escape of a powerful current of electricity from its wires might cause injury to a person however employed, however situated, and in whatever part of the city where the network of wires of these companies extends, then the negligence, if it resulted in injury or death to a person in any part of the city and however circumstanced, might be deemed the proximate cause of such injury or death.

The company, of course, was not held to the anticipation of extraordinary events. But surely a storm which deranges to some extent the wires of electric companies is not an extraordinary event; we have those occurrences a number of times in one season, perhaps. We know that the employes of the companies are required to go out immediately after storms to adjust the defects and troubles which have occurred by reason of the storms. These are not events which are unprecedented or unusual, so that the companies are not held to guard against them.

I have, perhaps, dwelt too long upon the negligence of the defendant company and its relation to the death of Rippon, but it has seemed to me well enough to suggest these general principles, applicable to cases of this character, which are not unlikely to come with greater and greater frequency as the companies employing agencies of this kind multiply in number.

The questions which have called for the larger discussion in this case, grow out of the claims of the assumed hazard and contributory negligence of the decedent. Here the burden rested upon the defendant. It is claimed by the power company that there was sufficient evidence to show beyond dispute that this man ought not to have received the injury even if the defendant company was negligent; but we think that it was a fair question for the jury. It is urged with much earnestness by counsel for plaintiff in error, that the decedent was charged with the duty of inspection of the appliances of the telegraph company, and that in the exercise of his duties he should have discovered the dangerous condition of the wires at the point of entry into the building. We have examined the record. It appears to us that his duties called upon him to examine the electrical clocks of the telegraph company, but we are not convinced, as counsel seem to think we should be, that he must have known—that as a matter of law he should have known—that the power company had placed one of its highly charged wires in close proximity to a wire of the telegraph company. We think that the jury were justified in attaching some force to the fact that for a long time the wire of the telegraph company had remained in a reasonably safe condition, passing through this porcelain duct without being brought into the neighborhood of a dangerous wire. We think it not clear that in the examination of the clocks to see whether they were working rightly, his attention would necessarily be called to the condition of the wires where they entered the building. Especially do we think that his attention would not necessarily be called to the fact that a change had been at some time made in the condition of the wires, from that which had existed for a long time before, when possibly he may have noticed them. Much more might be said upon this subject, but I think it enough to say that it was a question of fact, properly left to the jury for its consideration, and that the verdict is not so clearly against the weight of the evidence in this regard that either the court below or this court would be justified in disturbing it.

It is said that the court erred in some instructions in the general charge, and also in its refusal to give an instruction

asked by plaintiff in error. One instruction to which reference has been made in argument, embodied in the charge of the court, is substantially that a presumption existed in the case, and remained throughout, that the plaintiff was not guilty of contributory negligence, or that he exercised ordinary care. I will not attempt to repeat the precise words and I will not stop to examine the record for a more exact quotation, but I have stated the substance of the instruction with regard to which complaint is made. It may or may not be true that such a presumption of law exists. Persons in official positions are presumed to discharge their duties. Individuals, whether in official positions or not, are presumed to be innocent of wrong-doing. Possibly the same presumption may arise—we do not say that it does—that persons exercise that care which is ordinary exercised by persons of ordinary prudence. But at any rate, whether there be such presumption recognized by the adjudications of the courts or not, the instruction to the jury that the decedent was presumed to have exercised ordinary care called for no other action on their part or consideration of the evidence, than that which the court finally gave to them; and that is, that the negligence, the lack of ordinary care, must be shown by a preponderance of the evidence. The court did not say, nor is the inference to be drawn from what was said, that the jury were required to do something more by reason of the suggested presumption, than to find negligence by a preponderance of the evidence. So, even if the court were technically wrong in saying this to the jury, no prejudice resulted from it.

It is said that the court erred in not giving after the general charge, an instruction which was asked by the plaintiff in error. I will not stop to read it. It is enough to say that the court had sufficiently covered the point in the general charge, and especially in a sort of a conversation which arose between the judge and counsel who is now criticizing the action of the court in refusing to give the instruction finally asked. We think that the court did not err in refusing it.

Some suggestion was made in the argument, in the discussion of the claimed negligence of the defendant power company

as to the rule which will apply when a dangerous current of electricity is permitted to escape from the wire of the company which should control it. The courts of the different states are not altogether in harmony upon this question. In one or more the rule has been adopted that a conclusive presumption of negligence arises in such a case. In other words, that it is negligence *per se* to permit the current to escape. In other jurisdictions it has been held that while no such conclusive presumption arises, the burden shifts and that it becomes encumbent upon the company which permits the escape of the electric current to show that it was not negligent. In the Marsh case, to which I have referred, this question was fully considered. The authorities had been marshaled and examined, and in the consideration which I gave to the case in the court below, I concluded that the general rule should not be departed from and an exception introduced into our jurisprudence, and, therefore, I held that the burden still rested upon the plaintiff to show the negligence of the defendant; that while the defendant under such circumstances may be held to a high degree of care, that it is still but ordinary care under the circumstances commensurate to the dangers to be apprehended, and the burden does not shift. The circuit court, as I have said, affirmed the conclusion of the trial court in this as in other respects, and that point was especially discussed by Judge Winch, who sat in the circuit court in my stead and delivered the opinion.

No complaint is made as to the amount of the verdict in this case, and a search of the record fails to disclose any other matter in which the plaintiff in error has been prejudiced by any claimed errors. We think that the judgment of the court below should be affirmed.

*Smith & Baker* and *W. H. McLellan,* for plaintiff in error.
*C. A. Thatcher,* for defendant in error.