[Cite as *Diller v. Univ. of Toledo College of Med. & Life Sciences*, 2024-Ohio-5475.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| SHAWN DILLER, Admr. | Case No. 2024-00355JD |
| Plaintiff | Judge Lisa L. Sadler |
| v. | <u>DECISION</u> |
| UNIVERSITY OF TOLEDO COLLEGE OF MEDICINE AND LIFE SCIENCES | |
| Defendant | |

{¶1} Pursuant to Civ.R. 56, R.C. 2743.02(F), and L.C.C.R. 4.1, Defendant moves for a partial summary judgment in which Defendant asks the Court to hold that Sohaib Lateef, M.D. is entitled to personal immunity under R.C. 9.86 from Plaintiff's claims in this matter. Plaintiff does not oppose Defendant's motion for partial summary judgment. Upon careful review, the Court grants Defendant's motion for partial summary judgment for reasons that follow.

## I. Background

{¶2} Plaintiff has brought a wrongful death action with a survivorship claim against Defendant in which Plaintiff alleges that, on May 11, 2023, Yvonne Diller presented to a ProMedica Urgent Care with complaints of leg weakness, that Dr. Lateef was consulted, that Dr. Lateef reviewed the presenting symptoms and a brain CT, that Dr. Lateef ordered the administration of tenecteplase (TNK), that Yvonne Diller suffered a severe stroke as a result of the TNK, and that, on July 11, 2023, Yvonne Diller died from complications caused by the stroke and the administration of TNK. (Complaint, ¶ 6-10.)

{¶3} On September 10, 2024, Defendant "move[d] this Court for partial summary judgment holding that Dr. Sohaib Lateef is entitled to personal immunity under R.C. 9.86 from Plaintiff's claims in this matter." Defendant's motion for partial summary judgment is accompanied by exhibits, including an affidavit of Dr. Lateef in which Dr. Lateef waives

his statutory right under R.C. 2743.02(F) to participate in a hearing to determine his personal immunity.[1]

{¶4} Plaintiff has filed a response in which Plaintiff states, "Plaintiff will not oppose that motion, and **Plaintiff specifically encourages the Court to enter an Order granting Defendant's motion immediately**." (Emphasis sic.) Plaintiff further states, "But Plaintiff will note here that in the related Court of Common Pleas matter, Plaintiff will present evidence and arguments that Dr. Lateef was, in fact, a dual agent for purposes of treatment of Decedent Yvonne Diller." Defendant has not filed a timely reply to Plaintiff's response.

{¶5} On September 11, 2024, the Court advised the parties that it would consider the parties' arguments regarding the immunity of Dr. Sohaib Lateef during a non-oral hearing on October 16, 2024, in accordance with L.C.C.R. 4(D). Pursuant to a non-oral hearing, Defendant's motion for partial summary judgment is now before the Court for determination.

## II. Law and Analysis

### A. Legal standard for summary judgment

{¶6} Rule 56 of the Ohio Rules of Civil Procedure governs motions for summary judgment. *See* Civ.R. 56. Civ.R. 56(D) "contemplates a situation where summary judgment is not rendered upon the whole case." *Holeski v. Lawrence*, 85 Ohio App.3d 824, 834 (11th Dist.1993). The Supreme Court of Ohio has directed: "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992).

{¶7} According to Civ.R. 56(C) a summary judgment "shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled

---

[1] Under R.C. 2743.02(F) an officer or employee "may participate in the immunity determination proceeding before the court of claims to determine whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code."

to have the evidence or stipulation construed most strongly in the party's favor."[2] Under Civ.R. 56 a party who moves for summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). A party who moves for summary judgment "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Dresher* at 292-293. *See* Civ.R. 56(C). If a moving party "fails to satisfy its initial burden, the motion for summary judgment must be denied." *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). *See Omega Riggers & Erectors, Inc. v. Koverman*, 2016-Ohio-2961, ¶ 69 (2d Dist.) ("unless the movant satisfies its initial burden on a motion for summary judgment, the non-movant has no burden of proof"). But if a party who moves for summary judgment has satisfied its initial burden, then a nonmoving party "has a reciprocal burden outlined in the last sentence of Civ.R. 56(E)." *Dresher* at 293. *See* Civ.R. 56(E) ("[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

---

[2] Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." Any evidence that is not specifically listed in Civ.R. 56(C) "is only proper if it is incorporated into an appropriate affidavit under Civ.R. 56(E)." *Pollard v. Elber*, 2018-Ohio-4538, ¶ 22 (6th Dist.) However, courts "may consider other evidence if there is no objection on this basis." *State ex rel. Gilmour Realty, Inc. v. City of Mayfield Hts.*, 2009-Ohio-2871, ¶ 17; *Pollard* at ¶ 22.

Discussing Civ.R. 56(C), the Supreme Court of Ohio has stated:

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*State ex rel. Grady v. State Emp. Rels. Bd.*, 78 Ohio St.3d 181, 183 (1997), citing *Temple v. Wean United, Inc.*, 50 Ohio St. 2d 317, 327 (1977).

trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party").

{¶8} Under Ohio law a material fact "is an essential element of the claim or defense, as defined by the substantive law." *Morgan v. Beigel*, 2011-Ohio-406, ¶ 8 (3d Dist.), citing *Mount v. Columbus & S. Ohio Elec. Co.*, 39 Ohio App.3d 1, 2 (5th Dist.1987). "A dispute of fact is 'material' if it affects the outcome of the litigation." *Morgan* at ¶ 8, citing *Mount* at 2. The Tenth District Court of Appeals has discussed the concept of "disputed issues of fact" as follows:

> In every lawsuit there are some disputed issues of fact, but Civ.R. 56 focuses on those which are "material." The materiality determination of facts is discussed in *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. The mere existence of some factual disputes, if not material, will not defeat a summary judgment otherwise proper. If one's case is supported only by a "scintilla" of evidence, or if his evidence is "merely colorable" or not "significantly probative," summary judgment should be entered.

*Buckeye Union Ins. Co. v. Consol. Stores Corp.*, 68 Ohio App.3d 19, 22 (10th Dist.1990).

{¶9} The Tenth District Court of Appeals, however, has cautioned:

> At summary judgment, it is not the role of the court to resolve a disputed fact or weigh the credibility of the evidence, only to determine whether there exists a genuine dispute of material fact. . . . The trial court is limited to determining whether admissible evidence of the type contemplated by Civ.R. 56(C) gives rise to a genuine dispute of material fact; it is exclusively the role of the fact-finder to determine what weight to give that evidence at trial.

*Kiser v. United Dairy Farmers*, 2023-Ohio-2136, ¶ 16 (10th Dist.).

**B. Determination of a person's personal immunity under R.C. 9.86 requires a two-part analysis.**

{¶10} Defendant's Motion For Partial Summary Judgment presents this issue: whether Dr. Sohaib Lateef should be entitled to personal immunity under R.C. 9.86 arising out of his care and treatment of Plaintiff's decedent, Yvonne Diller.[3]

{¶11} The Tenth District Court of Appeals has instructed, "[W]hether a doctor is entitled to personal immunity from liability under R.C. 9.86 involves a question of law, an issue over which the Court of Claims has exclusive, original jurisdiction." *Marotto v. Ohio State Univ. Med. Ctr.*, 2012-Ohio-6158, ¶ 9 (10th Dist.), citing *Nease v. Medical College Hosp.*, 64 Ohio St. 3d 396, 400, (1992); *Johns v. Univ. of Cincinnati Med. Assocs., Inc.*, 2004-Ohio-824. *See* R.C. 2743.02(F) (conferring exclusive, original jurisdiction upon the Court of Claims to make immunity determinations).

{¶12} Determining whether a person is entitled to R.C. 9.86 immunity "requires a two-part analysis, the first part of which is to determine whether the person claiming immunity is a state officer or employee. If the person claiming immunity is a state officer or employee, the second part of the analysis is to determine whether that person was acting within the scope of employment when the cause of action arose." *Engel v. Univ. of Toledo College of Medicine*, 2011-Ohio-3375, ¶ 6, citing *Theobald v. Univ. of Cincinnati*, 2006-Ohio-6208, ¶ 14. Whether an individual "is acting within the course and scope of his employment or is a state employee is a question of fact." *Garvin v. State*,

---

[3] Under R.C. 2743.02(F) a civil action against an officer or employee, as defined in R.C. 109.36, "that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under [R.C. 9.86] and whether the courts of common pleas have jurisdiction over the civil action."

R.C. 9.86 provides:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

> This section does not eliminate, limit, or reduce any immunity from civil liability that is conferred upon an officer or employee by any other provision of the Revised Code or by case law. This section does not affect the liability of the state in an action filed against the state in the court of claims pursuant to Chapter 2743. of the Revised Code.

1998 Ohio App. LEXIS 2208, at *7 (10th Dist. May 21, 1998), citing *Tschantz v. Ferguson*, 49 Ohio App. 3d 9 (10th Dist.1989).

{¶13} With respect to the first prong of the two-part analysis discussed in *Engel* (i.e., whether the person claiming immunity is a state officer or employee), the Ohio Supreme Court has "stress[ed] that in most circumstances a person's status as a state employee is factually indisputable." *Engel* at ¶ 10. In *Engel* the Ohio Supreme Court did not adopt a formal test to determine whether a person is a state employee, but the Ohio Supreme Court did identify factors that may be helpful: (1) contractual relationship between state and alleged employee, (2) state control over actions of a purported employee, and (3) payment by the state for services of an alleged employee. *Engel* at ¶ 11-16. The Ohio Supreme Court also directed that this Court should consider whether a person holds a state office or position. *See Engel* at ¶ 17-20.

{¶14} With respect to the second prong of the two-part analysis discussed in *Engel* (i.e., whether a person was acting within the scope of employment when the cause of action arose), the Ohio Supreme Court has noted:

> The Revised Code does not define "scope of employment." The concept generally denotes an agency relationship in which the agent or employee is engaged in an activity that is logically related to the business of the principal or employer. See *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 120, 1998 Ohio 455, 689 N.E.2d 917; *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 278, 74 O.O.2d 427, 344 N.E.2d 334. For purposes of personal immunity under R.C. 9.86, a state employee acts within the scope of employment if the employee's actions are "in furtherance of the interests of the state." *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 287, 1992 Ohio 133, 595 N.E.2d 862. Thus, a state employee's duties should define the scope of employment.

*Theobald v. Univ. of Cincinnati*, 2006-Ohio-6208, ¶ 15. The Ohio Supreme Court has directed that

> the question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury. Thus, proof of the content of the

practitioner's duties is crucial. The Court of Claims must have evidence of those duties before it can be determined whether the actions allegedly causing a patient's injury were "in furtherance of the interests of the state" or, in other words, within the scope of employment.

*Theobald* at ¶ 23.

{¶15} According to the Complaint, on May 11, 2023, Yvonne Diller presented to a ProMedica Urgent Care with complaints of leg weakness, that Dr. Lateef was consulted, that Dr. Lateef reviewed the presenting symptoms and a brain CT, that Dr. Lateef ordered the administration of tenecteplase (TNK), that Yvonne Diller suffered a severe stroke as a result of the TNK, and that, on July 11, 2023, Yvonne Diller died from complications caused by the stroke and the administration of TNK.  (Complaint, ¶ 6-10.)

{¶16} In an affidavit Dr. Lateef avers, "From July 1, 2022 through June 30, 2023, I was employed as a resident/fellow physician at the University of Toledo."  (Lateef Affidavit, ¶ 1.)  And, in an affidavit Imran I. Ali, M.D., Interim Dean of the College of Medicine & Life Sciences for The University of Toledo, avers, "From July 1, 2022 through June 30, 2023, Dr. Sohaib Lateef, M.D., was employed as a resident physician in UToledo's Vascular Neurology Department."  (Ali Affidavit, ¶ 5.)

{¶17} Dr. Ali further avers that the Graduate Medical Education training programs of the University of Toledo "occur at various community hospital sites, including, but not limited to ProMedica Health System, located in Toledo, Ohio and its affiliated entities." (Ali Affidavit, ¶ 6.)  According to a Graduate Medical Education Agreement between Sohaib Muhammad Lateef, M.D. and the University of Toledo (which, among other things, outlines rights and responsibilities of Dr. Lateef and the University of Toledo), Dr. Lateef was assigned "Position: Post Graduate Year: 5" in the University of Toledo's Vascular Neurology Program, he was given a Program Training Level Designation of "R5," and he was paid a stipend for the period of July 1, 2022 through June 30, 2023.  And, under Dr. Lateef's Graduate Medical Education Agreement with the University of Toledo, in providing services and participating in the University of Toledo's Graduate Medical Education training program, Dr. Lateef was required to "[p]rovide clinical services commensurate with Resident's level of training under appropriate supervision as approved by the Program in circumstances and at locations included in the Program

covered by the University's professional liability insurance policies maintained on behalf of the Resident."

{¶18} Construing this evidence in favor of Plaintiff, as required by Civ.R.56(C), a reasonable person would conclude that from July 1, 2022, through June 30, 2023, Dr. Lateef had a contractual relationship with Defendant, that Defendant had control over the actions of Dr. Lateef, and that Dr. Lateef was paid for his services. A reasonable person would therefore conclude that during the period of July 1, 2022, through June 30, 2023, Dr. Lateef was an employee of The University of Toledo, a state university. *See* R.C. 3364.01(A) (combining the University of Toledo and the Medical University of Ohio at Toledo). And after the evidence is construed in favor of Plaintiff, as required by Civ.R. 56(C), a reasonable person also would conclude that the evidence sufficiently establishes that, through Dr. Lateef's Graduate Medical Education Agreement with the University of Toledo, Dr. Lateef was acting in furtherance of the interests of the University of Toledo's Graduate Medical Education Training Program, when Dr. Lateef provided medical care to Yvonne Diller on May 11, 2023. A reasonable person thus would conclude that Dr. Lateef was acting within the course and scope of his employment when this case arose.

## III.    Conclusion

{¶19} For reasons set forth above, the Court GRANTS Defendant's Motion for Partial Summary Judgment filed on September 10, 2024. The Court holds that Dr. Sohaib Lateef is entitled to personal immunity under R.C. 9.86 arising out of his care and treatment of Plaintiff's decedent, Yvonne Diller, on May 11, 2023, at ProMedica Health System in Toledo, Ohio. The Court further holds that Ohio courts of common pleas do not have jurisdiction over civil actions against Dr. Lateef arising out of his care and treatment of Yvonne Diller on May 11, 2023, at ProMedica Health System in Toledo, Ohio.

LISA L. SADLER
Judge

[Cite as *Diller v. Univ. of Toledo College of Med. & Life Sciences*, 2024-Ohio-5475.]

| | |
|---|---|
| SHAWN DILLER, Admr. | Case No. 2024-00355JD |
| Plaintiff | Judge Lisa L. Sadler |
| v. | <u>JUDGMENT ENTRY</u> |
| UNIVERSITY OF TOLEDO COLLEGE OF MEDICINE AND LIFE SCIENCES | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶20} For reasons set forth in the Decision filed concurrently herewith, the Court GRANTS Defendant's Motion for Partial Summary Judgment filed on September 10, 2024. The Court holds that Sohaib Lateef, M.D. is entitled to personal immunity under R.C. 9.86 arising out of his care and treatment of Plaintiff's decedent, Yvonne Diller, on May 11, 2023, at ProMedica Health System in Toledo, Ohio. The Court further holds that Ohio courts of common pleas do not have jurisdiction over civil actions against Dr. Lateef arising out of his care and treatment of Yvonne Diller on May 11, 2023, at ProMedica Health System in Toledo, Ohio.

LISA L. SADLER
Judge

**Filed October 18, 2024**
**Sent to S.C. Reporter 11/21/24**